Plaintiffs, Mr. and Mrs. Edward E. Stephens and Mr. and Mrs. Joel King, filed suit for damages against Crawford Coal Company ["Crawford"] alleging that Crawford's negligence or wantonness in conducting its strip mining operations proximately resulted in injury to their real property. Plaintiffs also alleged that the mining operation was a private nuisance. After a consolidated trial on the merits, a jury returned verdicts in favor of both sets of plaintiffs. Defendant now appeals from the denial of its motion for a new trial. We affirm.
The record reveals that defendant moved into Coaling, Alabama to strip mine in April of 1976. In conjunction with its strip mining operation, Crawford utilized explosives to remove the overburden from deposits of coal in the earth. Plaintiffs, who lived near the blasting sites, initially were disturbed by the noise of the blasting and the vibration they felt in their dwellings after some of the explosions. A few months after Crawford had begun strip mining in the area, plaintiffs began to notice certain defects in their residences which allegedly had not been present before. For example, Mr. and Mrs. Stephens testified that large *Page 538 
cracks appeared in the foundation of their house, as well as in the floor, the doors, the walls and the fireplace. Some of the inside doors would not fit squarely into their openings, and a number of nails pulled out of the walls. Also, the floor "buckled up" through the center of the house and several cabinets pulled away from the walls. Mr. and Mrs. King's testimony indicated that they experienced similar difficulties beginning in the summer of 1976.
Crawford Coal moved out of the vicinity of plaintiffs' homes in the latter part of the summer of 1977. Mr. Stephens testified that before Crawford began blasting, his property was worth $40,000; after defendant left the area, Stephens opined that his property was only worth $25,000. Mr. King's testimony indicated that the value of his property before the blasting started was $45,000; afterwards, he estimated the value at $25,000. The record also contains evidence concerning the expenditures necessary to repair the damage to the houses. Maxie Holloway testified that the cost to repair the Stephens residence would be about $6600, while approximately $11,000 would be required to correct the defects in the King home. Another witness, Joe Bell, estimated that the cost to repair the damage to either of the houses would be slightly in excess of $3,000.
After Crawford Coal moved out of the vicinity of the plaintiffs' property, another company, Basin Coal Company, moved into the same general area and began strip mining. Basin also used explosives in mining the area, and Mr. and Mrs. Stephens both testified, over defendant's objection, that the blasting done by Crawford was more severe than that done by Basin. Mrs. King's later testimony to the same effect was admitted without objection.
At the conclusion of the evidence, the trial court gave a number of written instructions requested by plaintiffs. Among these were several on the issue of damages which, in effect, authorized the jury to award damages to plaintiffs for the permanent injury to their property. For example, plaintiffs' Instruction 3 states:
 The Court charges the jury that if, after consideration of all the evidence in the case they should find the issues in favor of the plaintiffs, that [sic] they must award damages to the plaintiffs for the permanent injury to their land, and the measure of damages is the difference between the value of the land immediately prior to the blasting, and the value of the land immediately after the damage caused by the blasting.
After deliberation, the jury returned a general verdict in favor of plaintiffs King for $21,000, and a general verdict for plaintiffs Stephens in the amount of $16,000. Judgment was entered on these verdicts.
Crawford first contends that the trial court erred in admitting certain evidence over its objection:
(1) the testimony by Mr. and Mrs. Stephens generally comparing the severity of Crawford's blasting to that done by Basin; and
(2) testimony by Professor Thomas A. Simpson to the effect that the blasting done by Crawford was done in an improper manner and that the improper blasting techniques were the cause of the damage to plaintiffs' houses. It appears to us that the evidence was properly admitted and, in any event, any error committed by the trial court was error without injury under ARAP 45.
Defendant, in objecting to the questions to Mr. and Mrs. Stephens regarding the comparative severity of the blasting conducted by Crawford, did not specify any ground of objection. Defendant now asserts that the evidence was inadmissible because there was no showing that the conditions under which it blasted were substantially similar to those present when Basin was blasting. The long-standing rule in Alabama is that when "the ground of objection to the admission of evidence was general or no ground was stated, the action of the lower court in overruling such objection will be sustained unless the evidence is `patently inadmissible.'" Tankersly v. Webb,263 Ala. 234, 236, 82 So.2d 259, 261 (1955). *Page 539 
The testimony by the Stephenses in this case was not "patently inadmissible," for other legal evidence could have established that the required similarity of conditions existed at the time of the blasting done by Basin and that done by Crawford. Although the specific objection showing the absence of the proper predicate might properly have been sustained, under the circumstances of this case we find no error in the trial court's admission of the testimony. See Housing Authority ofthe City of Decatur v. Decatur Land Co., 258 Ala. 607,64 So.2d 594 (1953). In any event, any error on the part of the trial court was rendered harmless by the subsequent introduction, without objection, of Mrs. King's testimony that Basin's blasting was mild compared to Crawford's. See Schoen v. Schoen,271 Ala. 156, 123 So.2d 20 (1960).
Defendant next asserts that some of the expert testimony of Professor Simpson constituted impermissible expressions of opinion upon ultimate issues in the case. It is alleged that the trial court erred in admitting the following evidence over defendant's objection:
 Q. Mr. Simpson, what is your opinion as to whether or not the blasting activities were heavier than reasonably necessary?
[COUNSEL]: We object.
THE COURT: Overrule.
Q. You may state.
 A. I feel that the blasting was unduly — was not done in a proper manner.
[COUNSEL]: We move to exclude that.
THE COURT: Overrule.
 Q. And Professor Simpson, do you have an opinion as to whether or not the overburden consisting of rock and dirt which you described in the blasting operation at Coaling of Crawford Coal Company in Coaling could have been removed with less heavy blasting than the blasting done by the defendant corporation as indicated by the records you have examined?
[COUNSEL]: We object.
THE COURT: I will let him express an opinion.
Q. Do you have an opinion?
A. Yes.
Q. You may answer.
 A. My opinion is that the blasting was done in an improper manner. It was overloaded. It could have been done with less explosives.
. . .
 Q. Do you have an opinion, Professor Simpson, if the damage that was done to the plaintiffs' homes, to the King home and to the Stephens home by the blasting as you have testified that the blasting must have been improperly done?
A. Yes, I have.
Q. What is your opinion?
[COUNSEL]: We object.
THE COURT: Overrule.
Q. What is your opinion?
 A. My opinion is the blasting was improperly done or there would not be damage to the houses.
The objections to the questions concerning whether the blasting was heavier than was reasonably necessary were properly overruled. Virtually identical questions were approved by this Court in Harbison-Walker Refractories Co. v. Scott, 185 Ala. 641,64 So. 547 (1914), and in Marigold Coal, Inc. v. Thames,274 Ala. 421, 149 So.2d 276 (1963). Professor Simpson's testimony to the effect that improper blasting techniques caused the damage to the houses was also properly admitted. The witness, a professional engineer and geologist familiar with the effects of blasting on surrounding structures, had examined the physical condition of plaintiffs' property after the injury and before the property had been repaired. As he had formed an expert opinion about the cause of the damaged condition of the premises, it was not error for the trial court to allow Professor Simpson to express that opinion. See Crawford Johnson Co. v. Pryor Motor Co., 219 Ala. 108, 121 So. 388 (1929).
Defendant Crawford also argues that the lower court erred in instructing the jury that the measure of damages for injuries to realty is the difference between the *Page 540 
reasonable market value of the property before and after the property was injured. Although Crawford concedes that the charge was correct as a general proposition of law, it is urged that under the facts of this case the jury should have been instructed on the effect of the evidence of the cost to repair the property. While we may agree with the defendant arguendo
that the charge was incomplete because it did not cover the law of damages for temporary injury to realty (See Fuller v. Fair,202 Ala. 430, 80 So. 814 (1919)), nevertheless defendant has not demonstrated that the trial court's alleged error probably injured its substantial rights as is required under ARAP 45.See, e.g., Holley v. Seaboard Air Line Railroad Co., 291 Ala. 510, 283 So.2d 168 (1973). The mere fact that an incomplete instruction, otherwise proper, was given does not mandate reversal when, as here, the case was submitted to the jury on evidence that would have justified damages in excess of those actually awarded.
We have examined the remaining contentions advanced by defendant and have concluded that they lack merit. As a result the decision of the trial court must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.