Alfred and Jo Ann Clark appeal from Pike County Circuit Court, where summary judgment in favor of Alabama Farm Bureau Mutual Casualty Insurance Company (Farm Bureau) was entered against them in *Page 1137 
a declaratory judgment action filed by Farm Bureau.
The Clarks applied to Farm Bureau for a farm-owner policy on a jointly owned piece of property which had on it a frame dwelling.
When the application for insurance was taken, both appellants and a Farm Bureau agent were seated at the kitchen table in the Clarks' home. At the top of the application were four underwriting questions. Each question had a place for a positive or negative response, and a full explanation of any "yes" answers was requested.
Question number 1 asked whether anyone in the household had ever had any insurance cancelled or rejected, or had a company decline to insure or renew a policy. Question number 2 asked whether anyone in the household had ever filed for bankruptcy, had something repossessed, or had a foreclosure. Question number 3 asked whether anyone in the household had ever been sued or had sued anyone, and question number 4 asked whether anyone in the household had ever been arrested. According to the Clarks, the agent asked them the underwriting questions during the application, and either Alfred or Jo Ann, or both of them, responded with an answer. (Although the Clarks later insisted that the questions either weren't asked or were not asked of Alfred, they could not testify under oath during a sworn statement that the underwriting questions were not asked.)
The Clarks gave a negative response to each of the four questions. Jo Ann initialed a box that was immediately to the right of the questions. The application was also signed by Jo Ann. The information given on the lines reserved for "applicant" was that of Alfred Clark. This included his social security number, date of birth, employer and marital status. Jo Ann's social security number and date of birth were listed on the lines reserved for "spouse."
After considering the application, Farm Bureau issued a policy to the Clarks. A few months later, the Clarks' home was totally destroyed by fire while the Clarks were attending a movie. Their insurance policy was not destroyed in the fire, however, as it was in the Clarks' automobile during the fire. There were also some red markings or underlinings on the policy regarding the policy language concerning fire losses, replacement cost and additional living expense.
During its investigation of the fire loss suffered by the Clarks, Farm Bureau asked that each of the Clarks give a sworn statement regarding the fire loss and the circumstances surrounding their application for the insurance policy.
In his sworn statement, Alfred Clark testified that he had moved from Canada to the West Palm Beach/Miami, Florida area in 1974. He testified that he worked there as a marine mechanic, and that he had been unemployed for approximately four months before moving to Brundidge, Alabama. After moving to Brundidge, he worked as a mechanic for the Wiley Sanders Trucking Company before being terminated from that job. At the time of the fire, Alfred had been unemployed approximately six weeks.
Clark further said in his statement that neither he nor his wife had ever been arrested or convicted for any offense. He revealed in that statement that he had experienced a foreclosure while in Florida, and that his wife knew about it. He also revealed that an Allstate policy belonging to the Clarks had been cancelled prior to their application for the policy from Farm Bureau, and said that Jo Ann Clark was aware of that fact also.
Clark said that he originally thought he applied for the policy, but if he did not, his wife signed the application in his presence.
In further investigating the Clarks' fire loss, Farm Bureau learned that both Clarks had been arrested in Palm Beach, Florida, in 1972. Jo Ann Clark had been charged with prostitution and violation of the Florida Obscenity Law. Alfred Clark had been charged with "living off the earnings of a prostitute" and violation of the Florida Obscenity Law. Alfred was convicted on both *Page 1138 
counts. Neither of the Clarks revealed these arrests or Alfred's conviction at the time of application for the Alabama Farm Bureau policy.
After discovering the above information, Farm Bureau notified the Clarks that coverage was denied under the policy due to the material misrepresentations made by the Clarks in the application for insurance. It refunded their premiums, and filed a declaratory judgment action in January 1984 in Montgomery County Circuit Court, seeking to have Farm Bureau's rights and liabilities under the policy adjudicated. Farm Bureau requested a refund of some $4,500 paid to the Clarks under the living expenses provision of their policy before it realized that misrepresentation had occurred. Two days later the Clarks filed a complaint against Farm Bureau in Pike County Circuit Court, asking for recovery of the face amount of the policy and alleging fraud and bad-faith refusal to pay under the policy.
The Clarks responded to Farm Bureau's complaint by stating that they had not intentionally concealed any material facts, and requested a transfer of the case to Pike County. The transfer was granted.
The Clarks filed an amended answer asking that Jo Ann Clark be dismissed as a party defendant and requesting that their action against Farm Bureau be incorporated into the declaratory judgment action as a counterclaim. The trial court denied the Clarks' request to dismiss the declaratory judgment action and denied the request to dismiss Jo Ann Clark as a party defendant. Farm Bureau filed a motion for summary judgment in the declaratory judgment action.
Attached to the motion was an affidavit by Bill Oswalt, who is vice president for underwriting for Farm Bureau and who has been an underwriter for twenty-four years. Oswalt stated in his affidavit that he was in charge of underwriting at Farm Bureau, and, as such, was intimately familiar with the underwriting rules and guidelines used by Farm Bureau in deciding whether or not to issue an insurance policy.
Oswalt stated that based on the negative responses given by the Clarks to the four underwriting questions at the top of the application, Farm Bureau, according to its underwriting guidelines and procedures, had no reason to make further investigation into the backgrounds of the Clarks, and based upon the representations made, decided to issue the policy.
Oswalt stated that if positive responses had been given to any of the above questions, Farm Bureau would have made further inquiry, and then a decision would have been made whether or not to issue the policy.
Oswalt emphatically stated in his affidavit that had Farm Bureau known at the time of application for insurance that Alfred and Jo Ann Clark had been arrested and/or convicted for prostitution, living off the earnings of a prostitute, and violations of the Florida Obscenity Law, the policy would never have been issued at all.
In response to Farm Bureau's motion for summary judgment, the Clarks submitted affidavits which stated that they did not intentionally give false information in their application for insurance. Alfred Clark also stated that he was not asked the underwriting questions, not asked to look over the application, and that he did not appoint Jo Ann as his agent in answering the questions. Jo Ann stated that the answers were given in good faith and also stated that Alfred was not asked the underwriting questions.
The trial judge, after examining the sworn statements, pleadings, and affidavits, granted Farm Bureau's motion for summary judgment. The trial court listed as grounds the facts that intent to deceive was not necessary, and that the affidavits submitted by the Clarks in response did not conflict with Farm Bureau's contention that the statements made by the Clarks were false, material, and relied upon by Farm Bureau. From that order, the Clarks appeal.
Misrepresentations, omissions, or concealment of facts may prevent a recovery *Page 1139 
under an insurance policy if they are either fraudulent, material to the acceptance of the risk, or the insurer either would not have issued the policy at all, or would have required higher premiums if the true facts had been revealed. § 27-14-7, Code of Alabama 1975.
It is established law in Alabama that an intentional
misrepresentation of material facts relied upon by the insurer permits the insurer to void the policy. Bankers Life CasualtyCo. v. Long, 345 So.2d 1321 (Ala. 1977). National Savings LifeInsurance Co. v. Dutton, 419 So.2d 1357 (Ala. 1982), construed § 27-14-7 of the Code of Alabama 1975 and its predecessor to indicate that a representation does not have to be made withintent to deceive for an insurer to void an insurance policy. We quote the following language from Dutton:
 "It was unnecessary, therefore, for plaintiff to have provided incorrect information with an intent to deceive. If she innocently made an incorrect statement that was material to acceptance of the risk, or would have caused National in good faith not to have issued the policy as it did, then National could have denied her claim and voided her policy."
419 So.2d at 1361.
Materiality is defined by Couch on Insurance as when:
 "If the fact concealed would have shown the liability of the insurer for the loss to be greater than appeared upon the facts disclosed, and would, in consequence, have induced a rational underwriter, governed by principles presumed to govern prudent and intelligent underwriters in practice, to have rejected the risk or accepted it only at an increased premium, the fact is material."
9 Couch on Insurance § 38:27 (2d ed. 1962) (Supp. 1983).
In Alabama, the issue of whether a particular fact increases the risk of loss assumed by an insurance company is generally one for the jury. National Security Insurance Co. v. Tellis,39 Ala. App. 455, 104 So.2d 483 (1958). However, it has been held that there are some conditions which increase risk of loss as a matter of law. See Liberty National Life Insurance Co. v.Trammel, 33 Ala. App. 275, 33 So.2d 479 (1947) (cancer). Seealso Ginsberg v. Union Central Life Insurance Co., 240 Ala. 299,198 So. 855 (1940) (misstatement of age); Camden FireInsurance Association v. Landrum, 229 Ala. 300, 156 So. 832
(1934) (possession of property by tenant other than the one insured under a fire insurance policy); Gunn v. PalatineInsurance Co., 217 Ala. 89, 114 So. 690 (1927) (misrepresentation of extent of ownership interest); Crumptonv. Pilgrim Health Life Insurance Co., 35 Ala. App. 363,46 So.2d 848 (1950) (Hodgkin's disease). Aside from consideration of the Clarks' concealment of their involvement in litigation, their foreclosure, and their insurance cancellation, we must consider what effect their concealment of their arrests and/or convictions for prostitution, living off the earnings of a prostitute, and violations of the Florida Obscenity Law had on Farm Bureau's decision whether or not to insure the Clarks.
Sexual crimes, or offenses related thereto, such as abduction, aiding and abetting in lewd entertainment, rape and similar crimes, and soliciting for prostitutes are all crimes which are regarded as involving moral turpitude. 58 C.J.S.Moral § 1 (1948) (Supp. 1984). Prostitution has been held in this state to be a crime involving moral turpitude. Bryan v.State, 18 Ala. App. 199, 89 So. 894 (1921). Statutes which punish offenses such as "living off the earnings of a prostitute" are aimed at preventing the exploitation of prostitution. 63 Am. Jr. 2d Prostitution § 15 (1984).
Our supreme court has recently given the following definition for moral turpitude:
 "Moral turpitude signifies an inherent quality of baseness, vileness and depravity. It is immoral in itself, regardless of the fact that it is punished by law."
Ex parte McIntosh, 443 So.2d 1283 (Ala. 1983). We find that the offenses for which the Clarks were arrested and/or convicted *Page 1140 
were matters involving moral turpitude, and, as such, reflect on the character of applicants for insurance.
We further find that the matters concealed were material to an acceptance of the risk. We hold that a conviction of a crime involving moral turpitude which is not disclosed to a prospective insurer increases the risk of loss as a matter of law. After so holding, we must consider the propriety of the order of the trial court granting summary judgment for Farm Bureau.
A party moving for summary judgment must show that under no discernible set of circumstances could the other party recover and that there is an absence of a genuine issue as to any material fact. Butler v. Michigan Mutual Insurance Co.,402 So.2d 949 (Ala. 1981). In other words, the moving party must be entitled to the summary judgment as a matter of law. Butler,supra.
Rule 56 (e), A.R.Civ.P., provides that once a summary judgment motion has been made and supported as required by the rule, the motion is to be granted unless the adverse party makes an evidentiary or factual showing in opposition, to show that there is a genuine issue of fact for trial. Butler, supra.
Once Farm Bureau submitted its motion for summary judgment with Oswalt's attached affidavit, which stated that the facts concealed were material and that Farm Bureau would not have issued the policy had those facts been known, the Clarks had to present evidence showing that there was still an issue of material fact remaining in the case. The affidavits filed by the Clarks merely state that the misrepresentations were not intentional and that Alfred Clark did not sign the application. After Dutton, the misrepresentations made by an insured do not have to be intentional for an insurance company to void a policy, if the facts concealed were material and they increased the risk of loss. Alfred Clark did not have to personally sign the application. His wife answered the questions posed from the application in his presence and with his acquiescence. Such act presents, if not actual authority, at least apparent authority for the wife to act in his behalf. He is thus bound by her action. Treadwell Ford, Inc. v. Courtesy Auto Brokers, Inc.,426 So.2d 859 (Ala.Civ.App. 1983).
The Clarks also contend that the affidavit of Oswalt was inadmissible. We do not agree. See Phillips v. Alonzo,435 So.2d 1266 (Ala. 1983); Crawford Coal Co. v. Stephens,382 So.2d 536 (Ala. 1980); Liner v. Temple, 373 So.2d 638 (Ala. 1979); C. Gamble, McElroy's Alabama Evidence § 127.01 (5) (1977).
In summary: There were facts misrepresented or concealed by the insured; those facts were material, and increased the risk of loss; and, the concealment or misrepresentation does not have to be intentional. Therefore, the trial court did not err in granting Alabama Farm Bureau's motion for summary judgment and is due to be affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.