**STATE FARM GENERAL INSURANCE COMPANY, Plaintiff and Counterclaim Defendant,**

v.

**William Wayne OLIVER, et al., Defendants and Counterclaimants.**

**Civ. A. No. 86–AR–5484–NW.**

United States District Court,
N.D. Alabama,
Northwestern Division.

May 4, 1987.

---

John R. Benn, Florence, Ala., Michael B. Beers, Miller and Beers, Montgomery, Ala., for plaintiff and counterclaim defendant.

Henry H. Self, Jr., Michael J. Bernauer, Self & Bernauer, Florence, Ala., for defendants and counterclaimants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration the motion of State Farm General Insurance Company, plaintiff and counterclaim defendant in the above-entitled cause, for judgment n.o.v. and, in the alternative, for a new trial. This post-judgment motion, although prematurely filed prior to the entry of final judgment, shall be deemed filed after the judgment was entered. The court will not attempt to deal with each and every ground asserted in State Farm's motion but will address the issues which the court thinks sufficiently meritorious to deserve comment.

In chambers during trial the court shared with counsel its belief that there was an issue of Alabama law which, if properly raised in a post-trial motion, would be certified to the Supreme Court of Alabama pursuant to its Rule 18. Rule 18, A.R.A.P., provides, *inter alia:*

> When it shall appear to a court of the United States that there are involved in any proceeding before it questions or propositions of law of this state which are determinative of said cause and that there are no clear controlling precedents in the decision of the supreme court of

this state, such federal court may certify such questions or propositions of law of this state to the supreme court of Alabama for instructions concerning such questions or propositions of state law....

This court harbored doubt as to whether there were "controlling precedents" on whether or not an arson defense supported only by circumstantial evidence must, in order to be submitted to the jury in Alabama, exclude every reasonable hypothesis other than arson. After thorough consideration, the court gave the benefit of the doubt on this issue to State Farm and did not give the charge on this subject requested by the insureds, William Wayne Oliver and Katherine Oliver, although they may well have been correct. It is an interesting question, but the jury verdict mooted it and obviated the need to certify the question to the Supreme Court of Alabama. If the verdict had been different and if the Olivers were the post-trial movants, the court would invoke Rule 18, A.R.A.P., on this issue. The post-trial issues now presented by State Farm do not, in this court's opinion, qualify for certification under Rule 18, A.R.A.P.

State Farm interposed three alternative defenses to the Olivers' claim on a fire insurance policy. In chronological order they are:

1. An alleged misstatement or concealment by Mr. Oliver in the application for insurance so as to permit a rescission under Alabama Code § 27–14–7(a)(2) and/or (3).

2. Alleged arson by one of the insureds.

3. An alleged violation of the policy provisions requiring truth-telling during the presentment of the claim.

In its motion for judgment n.o.v., State Farm does not contend that there was no rational way for the jury to find that State Farm failed in its burden of proving the essential elements of its arson defense or the essential elements of its post-loss fraud defense. State Farm's evidence on these defenses was weak. Rather, State Farm now relies only upon its contention that it was and is entitled to a directed verdict on the defense which invokes Alabama Code

§ 27–14–7(a)(2) and/or (3). In its post-judgment motion, State Farm states its position thusly:

... there are no controverted issues of fact upon which reasonable persons can differ as to whether or not the Defendant William Wayne Oliver in his application for insurance to State Farm General Insurance Company misrepresented, omitted, concealed a fact, or made incorrect statements in the application which were material to the acceptance of the risk, or Plaintiff in good faith would not have issued the policy if the true facts had been made known to Plaintiff as set forth in the application as they relate to the previous refusal of Farm Bureau Insurance Company to write said policy. The evidence in this case was so overwhelming that a reasonable person could not reach a different conclusion.

Before closing argument to the jury, State Farm, probably wisely, gave up its alternative invocation of § 27–14–7(a)(1), which is the equivalent of common law fraud, in order to avoid the court's giving a jury charge describing State Farm's burden on that particular alternative defense. Such a charge would have placed the burden on State Farm to prove that Mr. Oliver's misrepresentation or concealment was with actual *intent to deceive* and that State Farm must have *reasonably relied upon the misrepresentation or concealment to its prejudice.* Section 27–14–7 provides three distinct and alternative grounds for avoiding a policy of insurance at its inception. *Stephens v. Guardian Life Insurance Co.,* 742 F.2d 1329 (11th Cir.1984); *National Life & Accident Insurance Co. v. Mixon,* 291 Ala. 467, 282 So.2d 308 (1973). As stated, after both sides rested, State Farm asked to withdraw its defense under § 27–14–7(a)(1), and the withdrawal was allowed.

The statutory provisions upon which State Farm now relies read, in pertinent part:

Misrepresentations, omissions, concealment of facts and incorrect statements *shall not prevent recovery under the policy or contract unless either:*

(2) *Material* either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer *in good faith would* either *not have issued the policy or contract,* or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss *if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.*

Ala.Code § 27–14–7(a)(2) and (3) (emphasis supplied).

The court will briefly outline the evidence, or the absence of evidence, which bears on whether or not State Farm met its burden of proving the essential elements of the alternatives in § 27–14–7(a)(2) and (3) in such an overwhelming fashion as to be entitled to a directed verdict. At this stage, the benefit of the doubt must be given to the Olivers. The evidence or absence of evidence bearing on State Farm's allegations that Mr. Oliver misrepresented or concealed facts material to the acceptance of the risk or hazard assumed, and bearing on State Farm's alternative allegation that State Farm would not have issued its policy if "the true facts had been made known to insurer as required either by the application or the policy or contract" all must be viewed in the light most favorable to Mr. Oliver. Deference must be given to the jury findings if any evidence or lack of evidence, considering logical inferences, can support those findings. That evidence or absence of evidence is as follows:

*The Evidence or Absence of Evidence on State Farm's Defense Under § 27–14–7(a)(3)*

On November 16, 1984, Mr. Oliver filed a written application for fire insurance coverage with State Farm's agent, Gus Garrard. The only handwriting on the application by Mr. Oliver, who is semi-literate, is his own signature at the bottom. Mr. Garrard asked the questions and explained the questions to Mr. Oliver and noted Mr. Oliver's answers. Nowhere in the insurance application can be found any words which track the words in § 27–14–7(a)(3) permit-

ting the insurance company to *contractually require the applicant to tell the truth upon penalty of a voidance of the contract.* The policy itself, when it was subsequently issued, also fails to contain any of the express language contemplated by § 27–14–7(a)(3) if the insured is to be placed on notice of the potential disastrous effect of any initiating misstatement or omission. Instead, the policy under a paragraph entitled "Concealment or Fraud" only says:

> If you or any other insured under this policy has *intentionally* concealed or misrepresented any *material* fact or circumstance relating to this insurance, whether before or after a loss, this policy is void as to you and any other insured.

(emphasis supplied).

State Farm informed the court that it chose not to invoke this contractual language in its attack on the policy *ab initio,* but relied instead on § 27–14–7(a)(3). In its policy language, State Farm chose, perhaps as a matter of salesmanship, not to take advantage of the opportunity provided by § 27–14–7(a)(3). Perhaps for good reason it decided not to incorporate the language contemplated by § 27–14–7(a)(3) as a means of contractually invoking § 27–14–7(a)(3) and setting up an avenue of escape from liability. Looking back on it, the court should not have submitted any issue under § 27–14–7(a)(3) to the jury, because the undisputed evidence shows that neither the application nor the policy by its express terms *required* exact and full truth if a misstatement, no matter how innocent, might affect the risk. As it turned out, by submitting the defenses under § 27–14–7(a)(3) to the jury the court committed harmless error.

■ Another reason for not having submitted any question under § 27–14–7(a)(3) to the jury is the statutory language which provides as an essential element that the insurer would not have issued the "policy or contract" but for the misinformation. The only "policy or contract" here issued in response to Mr. Oliver's application of November 16, 1984, was *not* the "policy or contract" which was in force at the time of the fire. The policy here involved was a *renewal* policy issued one year after November 16, 1984. When the Alabama Leg-

islature provided that "misrepresentations, omissions, concealment of facts and incorrect statements *shall not prevent a recovery ... unless*", it obviously was mandating a strict interpretation of its subsequent language in favor of the insured. If literally construed, § 27–14–7(a)(3) makes no reference to any "policy or contract" except a "policy or contract" issued in direct and immediate response to the false application. This court has found no Alabama decisions construing this statutory language in the context of this case. If this court is correct in its interpretation, a § 27–14–7(a)(3) issue should not have been submitted to the jury.

■ Yet another reason why State Farm never had a viable defense under § 27–14–7(a)(3) is that its policy itself represented to its insured that "this policy is void ... if [you] have *intentionally* concealed or misrepresented any *material* fact or circumstance". State Farm, in effect, waived the statutory avenue of avoidance provided by § 27–14–7(a)(3) *by contracting for something different. United Security Life Insurance Co. v. Wisener,* 40 Ala.App. 350, 113 So.2d 530 (1959). It would not be fair for State Farm to induce the sale of an insurance policy by holding out a more difficult avenue than § 27–14–7(a)(3) for avoiding the policy and then avoiding its own inducement. State Farm *contractually excused* innocent misrepresentations in the application.

■ The last question concerning the applicability of § 27–14–7(a)(3) involves the crucial words in the statute, "good faith". These words describe a fact which is peculiarly suitable for jury determination. State Farm obviously bore the burden of proving that it in "good faith" would not have written this policy if it had known that Mr. Oliver had sustained a fire loss nearly three years ago on a rental mobile home and/or if State Farm had known that State Farm and/or Cotton States and/or Farm Bureau had previously refused to write or extend coverage to the Olivers. It is impossible from Mr. Hahn's testimony to know if he was saying that just one of these "misstatements", if the truth had been known, would have caused State

Farm *"in good faith"* to decline coverage, and if just one, which one, or whether it was the aggregate of the allegedly erroneous information which *"in good faith"* would have caused it to decline coverage. What constitutes or fails to constitute "good faith", under these nebulous and undefined circumstances, was a jury question.

Assuming only for the sake of argument that State Farm's defense under § 27–14–7(a)(3) had *prima facie* viability, State Farm argues that since the Olivers did not (and could not) contradict the testimony of its underwriter, Mr. Hahn, State Farm was entitled to a directed verdict. The first pertinent question addressed to an applicant on the State Farm application form was:

Has the applicant had any losses, insured or not, in the past three years (fire, crime, wind, etc.)?

On the application Mr. Garrard recorded Mr. Oliver's answer to this question: "No". The second pertinent question was:

Has any insurer or agency cancelled or refused to issue or renew similar insurance to the named applicant or any household member within the past three years?

On the application Mr. Garrard recorded Mr. Oliver's answer to this question: "No".

■ During his testimony, Mr. Garrard did not undertake to explain the meaning of the words "et cetera", contained in the first question. Neither did Mr. Garrard explain "et cetera" to Mr. Oliver while filling out the application. State Farm apparently argues that this question was meant to inquire about every imaginable casualty loss occurring during the three years prior to November 16, 1984, including the now admitted damage to a rental mobile home by fire, and hypothetically, to the theft of a screwdriver from the back porch or to a cigarette burn on an automobile seat. According to Mr. Oliver, Mr. Garrard, while taking down the information from Mr. Oliver, told Mr. Oliver that the question about prior losses only involved losses sustained as a *homeowner*. Does State Farm contend that the jury was not entitled to believe Mr. Oliver? Mr. Garrard's discovery

deposition tends to corroborate Mr. Oliver's version of their conversation in this regard. Not only is there ambiguity in State Farm's application form itself, a fact which means that it must be construed in favor of the insured, but State Farm's authorized agent, when he articulated his interpretation, created an interpretation that the applicant could rely upon. *Nationwide Mutual Insurance Co. v. Clay,* 469 So.2d 533 (Ala. 1985). Furthermore, any mistake by State Farm's agent, if it contributed to a technical error by the applicant, eliminated any right which State Farm otherwise would have had to complain of the applicant's mistake. *National Life & Accident Insurance Co. v. Allen,* 285 Ala. 551, 234 So.2d 567 (1970).

■ The second pertinent application question, and its erroneous answer here relied upon by State Farm, also have an inherent ambiguity. In addition, Mr. Oliver testified that when the issue of a refusal by any prior insurer to insure the Olivers was reached in the application, he told Mr. Garrard that Mr. Cantrell, another State Farm agent, had recently turned him down, but that Mr. Garrard quickly responded that he could do what Mr. Cantrell could not do. The jury had a right to believe Mr. Oliver. There was, then, direct evidence that Mr. Garrard actually knew that his own company had previously and recently "refused to issue" a policy to the Olivers. This evidence of knowledge by State Farm does not depend upon the principle of agency which attributes to State Farm, as principal, knowledge of all things known to its authorized agents, including Mr. Cantrell, who wrote to Mr. Oliver on September 10, 1984, on a State Farm letterhead:

I am sorry the company [State Farm] will not write your Homeowner's because you were cancelled by another company [Cotton States?].

The fact that Cotton States is shown on the application as the "most recent homeowner's insurer" arguably put Mr. Garrard, and therefore State Farm, on notice that Cotton States had failed to renew the Olivers' homeowner's insurance. According to State Farm, this should have been

disclosed by Mr. Oliver. But, it was disclosed, if in an indirect way. It would have been an easy matter to explore the reason for this non-renewal if State Farm had deemed it important to the underwriting. The law of Alabama is clear that an insurance policy cannot be voided if the insurer either knew the true facts *or had sufficient indication that would put a prudent person on notice so as to induce inquiry which, if done with reasonable thoroughness, would have revealed the truth.* Under the evidence in this case, this was an issue for the jury. *Stephens v. Guardian Life Ins. Co.,* 742 F.2d 1329 (11th Cir.1984); *Bankers Life and Casualty Co. v. Long,* 345 So.2d 1321 (Ala.1977). When State Farm introduced into evidence a copy of the application of November 16, 1984, it unexplainably failed to include the extra information contained on the actual application in its files. Also it failed to produce this information to the Olivers during discovery. Not only did State Farm fail to reveal that it had actually performed a credit check on the Olivers in December, 1984, *after* the coverage was bound, but the application *as contained in State Farm's file,* which accidently surfaced during trial, reflected the following additional revealing language not contained in State Farm's trial exhibit:

Talked w/agent farm property *is not* located on same land 12/21/84 F. (emphasis in original).

It is obvious that State Farm did conduct a serious follow-up underwriting evaluation of the Olivers. It did not rely wholly on what was in the application. This exploration not only implicates the *Bankers Life* and *Stephens* principle but implicates the question of *materiality,* which will be more thoroughly discussed in the discussion of § 27–14–7(a)(2).

Assuming *arguendo* that Mr. Oliver in his naivete misstated something or concealed something which State Farm did not already know actually or vicariously, can State Farm win its case simply upon Mr. Hahn's self-serving after-the-fact testimony that State Farm would not have issued its policy had it known that Mr. Oliver had been cancelled or refused or non-renewed or had sustained some loss within the previous three years? Even if the credibility of such testimony is not always subject to scrutiny and rejection by a jury, Mr. Hahn's testimony was equivocal. As previously noted, it was impossible from Mr. Hahn's testimony to ascertain whether he was saying that Mr. Oliver would have been turned down only if *all* of the information on the form had been scrupulously correct or if only one piece of misinformation had been correct. Mr. Hahn equivocated in his interpretation of what kinds of losses Mr. Oliver was required to reveal. For instance, Mr. Hahn changed his mind on the stand as to whether the application required Mr. Oliver to reveal a previous automobile fire. Where, as in this case, the evidence is in direct conflict, the court must defer to the jury. *Allstate Insurance Co. v. Shirah,* 466 So.2d 940 (Ala.1985).

*The Evidence or Absence of Evidence on State Farm's Defense under § 27–14–(a)(2)*

Everything which the court has said about the evidence bearing on State Farm's defense under § 27–14–7(a)(3) is, or may be, relevant to the defense under § 27–14–7(a)(2). Under § 27–14–7(a)(2) there is the absolute statutory requirement that in order to avoid the coverage the representation or omission have been *"material"* to the acceptance of the risk. The question of whether a particular fact is or is not *material* is almost invariably a question for the jury, which is entitled to consider the factual context in which the determination is to be made. This, of course, includes all of the surrounding circumstances. State Farm's only expert witness, Mr. Hahn, did not testify in technical terms that the hazard or risk was increased by virtue of any particular piece of misinformation. If State Farm seriously intended to ask a jury to find that it had met its burden of proving the essential elements of § 27–14–7(a)(2), not only was it necessary for an expert witness to testify of an increased risk, but the jury had the right to *disbelieve* Mr. Hahn and to refuse to draw from what he said any inference of the existence of an increased hazard, *especially when the undisputed evidence was that the policy in force at the time of the fire was an*

*automatic renewal containing certain coverage increases, issued a full year after the initial policy, and with no intervening claims having been made.* Looked at logically, Mr. Hahn's testimony focused only on State Farm's already rejected defense under § 27–14–7(a)(3). It did not even colorably support a defense under § 27–14–7(a)(2).

■ Mr. Hahn admitted that the "materiality" of a misstatement in an original application depreciates over time so that an erroneous answer which might have been "material" to the underwriting at the time of the issuance of the policy might not be "material" twenty years later. Juries are charged with the responsibility for drawing lines which sometimes are difficult to draw. Even if this jury found Mr. Oliver guilty of a misstatement or concealment, apparently this jury drew the "materiality" line against State Farm under § 27–14–7(a)(2). Various items of misinformation must be kept in perspective. In most instances mistakes are relative in their importance. In every case where a loss occurs, whether after an innocent or after a deliberate misstatement in the insurance application, the insurance company cannot be allowed automatically to avoid coverage simply because it *own* employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact. If this were the law, insurance companies would be sorely tempted to defend, as State Farm has done here, almost every claim of loss. The Eleventh Circuit in *Federal Kemper Life Assurance Co. v. First National Bank,* 712 F.2d 459 (11th Cir. 1983), acknowledges that the pertinent law of Alabama, although criticized by some of the commentators, has "not jettisoned its requirement that before misrepresentations may void an insurance policy, those representations *must increase the risk of loss".* 712 F.2d at 463 (emphasis supplied) (footnote omitted). Also, in *Federal Kemper* the Eleventh Circuit recognizes that "in Alabama the issue of whether a particular condition increases the risk of loss assumed by an insurance company 'is generally one for the jury' ". 712 F.2d at 464 (citations omitted). None of the items allegedly misrepresented or concealed by Mr. Oliver in the instant case has been held, as a matter of law, to increase the risk of loss. State Farm may or may not have had a viable jury argument on the "risk of loss". It certainly did not have an absolute defense.

*Ground No. 15 of State Farm's Motion for a New Trial.*

■ The only other contention made in State Farm's post-judgment motion and which the court deems deserving of comment is Ground 15 of the motion for new trial. This ground asserts:

15. That the Court erred in charging the jury that Plaintiffs' case for fraud and misrepresentation which occurred after the loss was limited to only three items when Plaintiff produced evidence of numerous other items amounting to fraud and concealment.

Not only did the pre-trial order, as contemplated by Rule 16, F.R.Civ.P., limit the issues so as to preclude contentions by State Farm of post-loss misrepresentations beyond those described in the pre-trial order, but had State Farm seriously contended and included in its pre-trial "statement of position" that each and every misstatement by either Mr. Oliver or Mrs. Oliver, no matter how miniscule, in response to the countless post-loss questions put to them by State Farm could provide a separate and distinct basis for denying their claim under the contract provision requiring post-loss truthfulness, the Olivers would surely have moved for a partial directed verdict as to particular such claims. It is impossible to know exactly which alleged post-loss misstatements State Farm now would rely upon. Certainly some of the Olivers' alleged erroneous responses to questions addressed to them after the fire are so innocuous that, as a matter of law, they could form no defense to the Olivers' claim. State Farm not only used a scattergun to *set up* its post-loss defenses during its fire investigation, which failed to prove to the jury's satisfaction that the Olivers were arsonists, but now State Farm seems to want to use the same scattergun at trial. Rule 16 is designed to focus the issues, and that is what the court used it for in this case.

*The Other Issues*

The other issues raised in State Farm's post-judgment motion are, in this court's opinion, without merit.

An appropriate separate order will be entered.