681 So.2d 570 (1996)
Marshall Lee AMERSON
v.
Bobby Garland GARDNER, Carl Cannon Chevrolet-Olds, Inc., and MIC Life Insurance Corporation.
2941201.
Court of Civil Appeals of Alabama.
March 29, 1996.
Modifying Opinion on Overruling of Rehearing June 21, 1996.
*571 Ronald O. Gaiser, Jr. and J. Danny Hackney of Gaiser and Associates, Birmingham, for Appellant.
Charles R. Driggars and C. Lee Reeves of Sirote & Permutt, P.C., Birmingham, for MIC Life Ins. Corp.
Edward R. Jackson of Tweedy, Jackson and Beech, Jasper, for Bobby Garland Gardner and Carl Cannon Chevrolet-Olds, Inc.
SAM A. BEATTY, Retired Justice.
The plaintiff, Marshall Lee Amerson, appeals from a summary judgment entered in favor of the defendants, Bobby Garland Gardner, Carl Cannon Chevrolet-Olds, Inc. ("the dealership"), and MIC Life Insurance Corporation. Our supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. We affirm.
On September 26, 1992, Amerson purchased a new Chevrolet van from the dealership. After Amerson completed his purchase arrangements with the dealership, he met with Gardner, a dealership employee, to complete the paperwork necessary to finance the van through General Motors Acceptance Corporation ("GMAC"). Amerson alleged in his brief in this court that during that meeting, Gardner persuaded him to purchase credit disability insurance issued by MIC. In his deposition, however, Amerson testified that Gardner merely informed him that the credit disability insurance was available and asked if he wanted to purchase it:
"The best I remember, the man just asked me if I wanted the disability insurance on the vehicle, and I told him I did. He wrote it up, and I signed the paper on the contract....
". . . .
"[Gardner] wrote up the sale paper for the vehicle and the financing and the sale of the disability insurance. He just asked me if I wanted the disability insurance....
". . . .
"I didn't think of [disability insurance] until I was talking to Bob Gardner, and ... he asked me if I wanted it.... He explained the price of the insurance and all, *572 and I told him I'd go ahead and take it...."
In any case, Gardner presented the insurance application form to Amerson for him to read and sign. The application form is written so that an applicant signing it represents that he is gainfully employed at least 30 hours per week and that he has not consulted with or been under the care of a doctor or confined in a hospital within the past three months because of certain specified conditions, one of which is lung problems. Those representations are directly above the signature line. Amerson testified that although he can read, he did not read the form before he signed it, and that if he had read the form, he would not have purchased the insurance. He qualified for the insurance on neither count, because he had been laid off from his mining job since approximately April 1992 and because he had been treated for chronic obstructive pulmonary disease during the three months immediately before he purchased the van. Amerson signed the form; Gardner then gave him the certificate of insurance. Gardner did not ask Amerson whether he was employed, nor did he ask any questions about Amerson's health or medical treatment. He also did not discuss with Amerson the potential ineffectiveness of the insurance if Amerson was not working or if he had any of the mentioned preexisting medical conditions.
Within a few months, Amerson became ill with respiratory problems and was declared totally disabled. He filed a claim for disability benefits with MIC in June 1993. In August 1993, after an investigation, MIC denied benefits based upon Amerson's pre-existing pulmonary condition, coverage for which was specifically excluded in the policy, as well as his lack of employment when the policy was issued. MIC refunded Amerson's premium payments to him. Without the disability insurance, Amerson was not able to make his monthly payments on the van, and GMAC repossessed it. GMAC sold the van at a loss, and notified Amerson of a $7,219.71 deficiency owed. Amerson filed a Chapter 13 bankruptcy proceeding in December 1993. He was discharged in bankruptcy in October 1994, having paid his creditors' claims.
Amerson filed this action in June 1994. He alleged negligent procurement of insurance, fraud in the inducement, fraudulent suppression, breach of contract, and bad faith. Amerson argues that the trial court erred in entering the summary judgment.
Our standard of review in a summary judgment case is well settled. The summary judgment was proper if there was no genuine issue of material fact and the appellees were entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. Gardner, the dealership, and MIC had the burden of making a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. Long v. Jefferson County, 623 So.2d 1130 (Ala.1993). If they made that showing, then the burden shifted to Amerson to present evidence creating a genuine issue of material fact so as to avoid the entry of a judgment against him. Id. In deciding whether there was a genuine issue of material fact, we view the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Id. The applicable standard of review is the "substantial evidence" rule. § 12-21-12, Ala. Code 1975. "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
We first address Amerson's claims against MIC. In light of Amerson's testimony that he did not read the application and would have known that he was not qualified to purchase the insurance had he read it, a summary judgment in MIC's favor was clearly proper. Section 27-14-7, Ala.Code 1975, prevents recovery under an insurance policy if the application contains misrepresentations, omissions, or concealments of facts that either are fraudulent, are material to the acceptance of the risk or to the hazard assumed by the insurer, or are such that but for them, the insurer, acting in good faith, would not have issued the policy. An insurer may void an insurance policy based on a misrepresentation in the insurance application, *573 even if the misrepresentation was unintentional. Clark v. Alabama Farm Bureau Mut. Casualty Ins. Co., 465 So.2d 1135 (Ala. Civ.App.1984). An insurance company has the right to expect a prospective insured to give truthful information on the application, and the insurance company normally has no duty to inquire further into whether an insured has told the truth on the application. Hess v. Liberty Nat'l Life Ins. Co., 522 So.2d 270 (Ala.1988); Old Southern Life Ins. Co. v. Spann, 472 So.2d 987 (Ala.1985).
We now turn to Amerson's claims against the dealership and Gardner. Those claims are totally without merit; therefore, a summary judgment in favor of the dealership and Gardner was also clearly proper. Amerson needed to present substantial evidence of fraud in order to defeat the motion for summary judgment. We find that the record fails to disclose any fraudulent inducement or fraudulent suppression on the part of the dealership or Gardner.
Amerson himself testified repeatedly that no one induced him to purchase the insurance:
"Q. So, [Gardner] didn't tell you anything that day that would lead you to believe or that induced you to buy this insurance, did he? He just asked you if you wanted it, and you said, `How much is it going to cost?'
"A. Uh-huh.
". . . .
"Q. Talking about Mr. Gardner. He didn't tell you anything that would lead you or induce you to buy this insurance?
"A. Well, you know, he asked me if I wanted the disability and all, and I told him yeah.
". . . .
"Q. Okay. And if you had read the document, you can understand it and you would not have signed it because you knew that you had been treated within the last three months, and you knew that you were laid off, didn't you?
"A. Yes, sir. I wouldn't have bought the insurance if I had read, you know, what that states. I wouldn't have bought it because I knew then that it wouldn't pay off, you know, it wouldn't be of benefit no way for me to go ahead and buy it.
"Q. And this is a correct and truthful statement that I'm about to make. No one at the dealership, and no one at MIC Life, persuaded or induced you to buy this by saying that you would be covered even if you had been treated within three months or even if you were laid off, did they?
"A. No, sir, huh-uh."
The case of Union Security Life Ins. Co. v. Crocker, 667 So.2d 688 (Ala.1995), cited by the dissent, can be distinguished on its facts. In Union Security, a bank employee, Taylor, sold credit life insurance to the plaintiff, Mrs. Crocker, and her husband. Taylor premarked a health disclosure statement for the Crockers, indicating that neither suffered from any past illnesses; however, Mr. Crocker had had significant health problems for approximately 10 years. Witnesses testified that Taylor knew the Crockers and knew about Mr. Crocker's health problems. Our supreme court held that the jury could reasonably have found that Taylor had a duty to disclose to the Crockers that the policy benefits might not be paid if Mr. Crocker had health problems, and that his failure to do so induced them to obtain the coverage.
The record in this case reflects that Gardner completed the insurance application form for Amerson, but, unlike the form the Crockers signed in Union Security, the form Amerson signed contained no specific questions regarding the insured's health. The only representation made on the form was that made by Amerson when he represented, by his signature, that he was "now in good health and [had] not within the past 3 months consulted or been under the care of a doctor or other practitioner ... because of ... any condition of the ... lungs." The record does not reflect any evidence to indicate that Gardner and Amerson knew each other outside of their business contact when Amerson purchased the van, or that Gardner knew anything about Amerson's health. There is evidence to indicate that Amerson told another dealership employee about his lack of employment and that he "might have" told Gardner about it, but even so, there is no *574 evidence that Gardner had any indication that Amerson had preexisting health problems, which were obviously of critical importance to MIC.
The only questions that remain are whether Gardner had a duty to tell Amerson that he must be employed and in good health to obtain credit disability insurance, and, if so, whether Gardner fraudulently suppressed that fact. In general, mere silence is not fraud unless a confidential relationship or special circumstances exist; otherwise, active concealment or misrepresentation must be present. Gary v. Kirkland, 514 So.2d 970 (Ala.1987). We find no confidential relationship or special circumstances in this case. When the parties to a transaction deal at arm's length, with no confidential relationship, no obligation to disclose arises when information is not requested. Trio Broadcasters, Inc. v. Ward, 495 So.2d 621 (Ala. 1986). There was no duty to disclose here, and consequently, no fraud or misrepresentation on anyone's part but Amerson's.
Because we hold that the trial court properly entered the summary judgment, we need not address the appellees' argument that Amerson's claims are barred by estoppel as a result of his failure to list the cause of action pursued in this lawsuit as a potential asset in his Chapter 13 bankruptcy proceedings.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
THIGPEN, YATES, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., and MONROE, J., dissent.
MONROE, Judge, dissenting.
I believe substantial evidence was presented from which a jury could determine that Amerson was fraudulently induced into purchasing credit disability insurance. Therefore, I must dissent.
The plaintiff, Amerson, argues that Gardner knew or should have known that Amerson did not qualify for the disability insurance policy Gardner sold him. Amerson, who quit school in the eighth grade, testified that he told at least one salesman at the car dealership that he had been laid off from work, and that on his credit application, he showed that he had been laid off. Regardless, salesman Bobby Gardner made arrangements for Amerson to finance the purchase of a van through GMAC. When Amerson met with Gardner to complete the paperwork on the sale of the van, Gardner persuaded him to purchase the credit disability insurance policy. The evidence shows that Gardner then completed the insurance application and had Amerson sign the form. Amerson testified that he did not read the policy application before he signed it. There is evidence that Gardner did not question Amerson about his employment status or his health while filling out the insurance policy application. However, a reasonable person could conclude that Gardner, who did the paperwork to arrange financing for the van, would be aware that Amerson was out of work when he purchased the van and insurance. Amerson testified that, had he known about the policy's employment and health requirements, he would not have purchased the insurance.
The facts in Union Security Life Insurance Co. v. Crocker, 667 So.2d 688 (Ala.1995), are strikingly similar to those in this case. Mrs. Crocker and her husband obtained a consolidation loan from a branch of First Alabama Bank. When they got the loan, the branch manager sold them a credit life policy through Union Security Life Insurance Company, even though he was aware of health problems that would make Mr. Crocker uninsurable. Like the salesman in the case at bar, the branch manager filled out the insurance application without asking the Crockers for information, and then the Crockers signed the application. Mr. Crocker died of heart disease, and Mrs. Crocker applied for insurance benefits. Union Life denied coverage based on Mr. Crocker's history of heart disease. A jury determined that the branch manager had been acting as an agent of the insurance company when he sold the policy *575 to the Crockers, and found the insurance company liable to Mrs. Crocker on several fraud claims. The insurance company appealed, claiming that the trial court erred in denying its motion for a summary judgment on the fraud claims. The Alabama Supreme Court disagreed, saying that based on the facts, a jury could reasonably find that the branch manager had a duty to disclose the policy's restrictions to the Crockers.
"The existence of a duty to disclose is a legal question and is to be discerned from the confidential relations of the parties or from the particular circumstances of the case. Ala.Code § 6-5-102; Interstate Truck Leasing, Inc. v. Bender, 608 So.2d 716 (Ala.1992). Some factors the court may consider are the relationship of the parties, the value of the particular facts, and the relative knowledge of each party. Bender. Where the accused has superior knowledge of the fact and the other party is being induced to take action that that party might not have taken had he or she known the fact, the obligation to disclose is particularly compelling. Bender."
Crocker, 667 So.2d at 692.
In the case at bar Amerson presented substantial evidence from which a jury could reasonably conclude that Gardner had a duty to disclose that the policy would be void if Amerson were not working or had certain health problems at the time he applied for the policy, and that his failure to disclose the policy's restrictions induced Amerson to purchase the insurance. Because Amerson presented substantial evidence that Gardner had a duty to disclose information regarding the policy, the summary judgment should not have been entered. The trial court erred in entering the summary judgment in favor of the defendants at least as to the fraud counts.
Furthermore, whether Gardner was acting as an agent for MIC Life Insurance Corporation and/or the car dealership when he sold Amerson the policy is a question for the jury and not a proper subject for summary judgment. See Continental Electric Co. v. American Employers' Insurance Co., 518 So.2d 83 (Ala.1987).
For these reasons, I would reverse the judgment of the trial court. Therefore, I must respectfully dissent.
ROBERTSON, P.J., concurs.

ON APPLICATION FOR REHEARING
SAM A. BEATTY, Retired Justice.
On application for rehearing, Amerson contends that he had purchased credit disability insurance from Gardner on two previous occasions, and, therefore, he argues, they had a "course of dealing" that imposed on Gardner a duty to disclose. The record does not support Amerson's argument. Amerson testified in his deposition that he had purchased credit disability insurance when he bought a truck from Carl Cannon in 1988 and that he thought Gardner was at the dealership then. Later in his deposition, Amerson testified that when he bought his truck Gardner "just asked me if I wanted [the insurance], and I told him yeah, and he took care of the paperwork." Amerson was apparently working and did not have any pre-existing health problems at that time. Amerson filed a claim on the 1988 credit disability policy as the result of a disability caused by an accident at work, but there is no evidence that Gardner handled that claim or knew anything about it. Amerson stated that he had purchased two other automobiles from Carl Cannon, but he said that he could not remember whether he purchased credit disability insurance on those occasions. Amerson also testified that he had purchased credit disability insurance on his former wife's Toyota automobile, but there is no evidence that either that car or the insurance was purchased from Carl Cannon.
Even if Gardner did sell credit disability insurance to Amerson in 1988, we conclude that, without more, that prior business contact did not create any kind of confidential relationship or special circumstances that would have given rise to any affirmative duty on Gardner's part to disclose. We see no reason, therefore, to grant a rehearing in this case based upon the duty-to-disclose issue.
None of the other contentions asserted by Amerson in his application for rehearing *576 have merit. His application for rehearing is hereby overruled.
OPINION MODIFIED AND EXTENDED; APPLICATION OVERRULED; RULE 39(k), Ala.R.App.P., MOTION DENIED.
THIGPEN, YATES, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., and MONROE, J., dissent.