962 So.2d 234 (2006)
QUALITY CASUALTY INSURANCE COMPANY
v.
Otis J. RUBEN et al.
2050042.
Court of Civil Appeals of Alabama.
April 14, 2006.
Joseph A. Driver and Brett A. Ross of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for appellant.
William M. Hammond of The Hammond Firm, P.C., Birmingham, for appellee Donald Young.
THOMPSON, Judge.
Quality Casualty Insurance Company ("Quality Casualty") filed a declaratory-judgment action against Otis J. Ruben ("Otis"), Diane Ruben ("Diane"), Christopher J. Ruben ("Christopher"), and Donald Young. In that action, Quality Casualty sought a determination that it was not obligated to defend, indemnify, or provide benefits under an insurance policy it had issued to Otis and Diane. As a basis for its action, Quality Casualty alleged that Otis had made certain misrepresentations in the application for insurance and that, as a result, it should not be required to provide coverage under a renewal policy issued after the initial policy of insurance had expired. Quality Casualty's declaratory-judgment action was assigned case no. CV-04-999.
Otis, Diane, and Christopher (hereinafter referred to collectively as "the Rubens") answered in case number CV-04-999, denying the allegations made in Quality Casualty's complaint; they also asserted a counterclaim in which they alleged breach of contract and bad faith. Young also filed a counterclaim against Quality Casualty in case no. CV-04-999, and he filed cross-claims against the Rubens. Young sought compensation for injuries he claimed to have suffered as a result of an automobile accident allegedly caused by Christopher when Christopher was driving an automobile owned by Otis and Diane.
In addition, Young initiated a separate action against Quality Casualty; that action was assigned case no. CV-04-1179. The record indicates that in case no. CV-04-1179 Young asserted essentially the same claims as those already asserted in the counterclaims and cross-claims he had *235 asserted in Quality Casualty's declaratory-judgment action designated as case no. CV-04-999. Therefore, on February 1, 2005, the trial court entered an order consolidating the two actions but bifurcating the issue whether Quality Casualty was liable under the terms of the insurance policy. Thus, in its February 1, 2005, order, the trial court designated the issue whether Quality Casualty was liable for coverage under the insurance policy as "the sole issue to be addressed in CV-04-999" and it specified that all other claims and issues were reassigned to case no. CV-04-1179.
The trial court conducted an ore tenus hearing in case no. CV-04-999. On July 15, 2005, the trial court entered a judgment in that case in which it determined that Quality Casualty was not entitled to be relieved from providing insurance coverage under the insurance contract between it and Otis and Diane. Quality Casualty timely appealed to our supreme court, which transferred the appeal to this court pursuant to 12-2-7(6), Ala.Code 1975.
The circumstances out of which this action arose are as follows. On July 2, 2003, Otis applied for automobile insurance from his insurance agent, James L. Holt ("Holt"), for a 2002 Ford Escort automobile ("the Escort") and a 1997 Isuzu Rodeo automobile that is not at issue in this matter. Holt testified that he filled in a computerized insurance application for Otis based on Otis's responses to questions contained on the insurance application. In answering the questions on the application for insurance, Otis represented that his and Diane's son, Christopher, was not a resident of his household; Otis testified that, at the time he answered the questions on the insurance application, Christopher had moved to Birmingham to begin college. Otis also answered "no" to the questions whether the Escort was to be kept at school or college and whether Otis had other insurance on any other vehicles. Otis listed only himself and Diane as regular drivers of the Escort.
Otis obtained insurance quotes from at least two different insurance companies through his application with Holt. At least one of those insurance quotes also included Christopher as a regular driver of the Escort. However, because the insurance quote that included Christopher as a regular driver of the Escort cost over $1,300 more for a six-month period than the cost of insurance for just Otis and Diane, Otis elected not to obtain insurance coverage that included Christopher as a regular driver of the Escort.
On July 2, 2003, the same day that he applied for the automobile insurance, Otis obtained an insurance policy for the Escort and the other vehicle from Quality Casualty. Christopher was not designated as a regular driver of the Escort under that insurance policy. Otis understood that Christopher would have coverage when driving the Escort if Christopher used the automobile only occasionally as an "infrequent user" of the Escort. It is undisputed that Quality Casualty would not have issued the insurance policy, or would not have issued the policy for the same premium rate, if Christopher had been listed as a regular driver of the Escort.
Otis and Christopher testified that Christopher initially walked to class or obtained rides from friends or his brother. However, in late September or October 2003, Otis and Diane began leaving the Escort in Birmingham for Christopher to use on occasion. Otis testified that Christopher had permission to use the Escort only during weather that made it difficult for him to get to class. Christopher testified that he obtained permission when he used the Escort. Christopher and Otis *236 testified that Christopher returned home from college approximately three out of every four weekends; Christopher sometimes traveled home in the Escort, but on other occasions Otis and Diane would transfer Christopher to and from college.
In January 2004, the initial insurance policy between Otis and Diane and Quality Casualty expired, and Quality Casualty issued a renewal policy to Otis and Diane. No separate application for insurance was completed in order for Otis and Diane to renew the initial insurance policy. Quality Casualty did not investigate whether any of the information on the application for insurance had changed, and Otis and Diane did not indicate to or notify Quality Casualty that Christopher often drove the Escort or kept it at college.
The accident for which the Rubens and Young seek insurance coverage occurred on a weekend when Christopher was home from college. On April 4, 2004, Christopher obtained his parents' permission to drive the Escort to a church service and to a restaurant for lunch following the service. Young was a passenger in the Escort at the time the accident occurred. At the time of the accident, the renewal policy was in effect.
Quality Casualty alleges that Otis misrepresented that at the time he completed the insurance application in July 2003 Christopher was not a resident of his household. Quality Casualty relies on the testimony of Christopher, Otis, and Diane to the effect that Christopher received mail at Otis and Diane's residence, that Christopher's driver's license listed his address as Otis and Diane's residence, and that Christopher returned home from college most weekends. Quality Casualty also alleges that Otis misrepresented that the Escort would not be kept "at school." Although Otis testified that it was not his intention at the time he completed the insurance application that the Escort be kept by Christopher at college, the evidence established that the Escort was often with Christopher at college in Birmingham. Quality Casualty also maintains that Otis falsely represented that he did not have insurance coverage through another company on another vehicle he owned. Otis testified at the hearing in this matter that he did not recall having insurance on that other vehicle; however, in a prior sworn statement, he answered that he did have insurance on that vehicle at the time he applied for insurance with Quality Casualty.
Quality Casualty argued before the trial court that, based on Otis's alleged misrepresentations, the insurance policy should be rescinded. With regard to that argument, the trial court found in its judgment that it
"[was] not reasonably satisfied from the evidence that at the time Defendant, Otis Ruben, signed the original application for insurance in July 2003, he made such blatant misrepresentations as would result in there being no `meeting of [the] minds' so as to void and invalidate the contract of insurance at issue in this case. The Court notes that its conclusion would be different if the representations made on the original application had instead been made at the time the policy was renewed in January 2004."
Quality Casualty does not challenge that determination on appeal.
Rather, relying on § 27-14-7, Ala.Code 1975, Quality Casualty alleges that, based on the misrepresentations Otis allegedly made on the application for insurance, it did not have any liability to indemnify or defend under the insurance policy under which the Rubens and Young claimed coverage. Section 27-14-7 provides, in pertinent part:

*237 "(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
"(1) Fraudulent;
"(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
"(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."
Quality Casualty cites Amerson v. Gardner, 681 So.2d 570, 572-73 (Ala.Civ.App. 1996), in which this court discussed an insurance company's right to expect that its potential insureds truthfully respond to questions posed on the application for insurance. This court explained:
"Section 27-14-7, Ala.Code 1975, prevents recovery under an insurance policy if the application contains misrepresentations, omissions, or concealments of facts that either are fraudulent, are material to the acceptance of the risk or to the hazard assumed by the insurer, or are such that but for them, the insurer, acting in good faith, would not have issued the policy. An insurer may void an insurance policy based on a misrepresentation in the insurance application, even if the misrepresentation was unintentional. Clark v. Alabama Farm Bureau Mut. Casualty Ins. Co., 465 So.2d 1135 (Ala.Civ.App.1984). An insurance company has the right to expect a prospective insured to give truthful information on the application, and the insurance company normally has no duty to inquire further into whether an insured has told the truth on the application. Hess v. Liberty Nat'l Life Ins. Co., 522 So.2d 270 (Ala.1988); Old Southern Life Ins. Co. v. Spann, 472 So.2d 987 (Ala. 1985)."
Amerson v. Gardner, 681 So.2d at 572-73. In Amerson v. Gardner, supra, this court, citing § 27-14-7, affirmed a summary judgment entered in favor of the insurer. However, the insurance policy under which the insured sought coverage in that case was the initial policy issued following the completion of the insurance application; that insurance application contained misrepresentations. Amerson v. Gardner, supra. Thus, the facts of that case are distinguishable from those of the case currently before this court; this case involves a renewal policy issued after the initial policy that was obtained based on alleged misrepresentations.
In reaching its judgment rejecting Quality Casualty's argument based on § 27-14-7, the trial court relied on Alfa Mutual General Insurance Co. v. Oglesby, 711 So.2d 938 (Ala.1997). In that case, the insured did not truthfully answer the question in his application for insurance regarding whether a member of the household had ever been arrested for any reason. The insured did not disclose that he had been arrested a number of times and had pleaded guilty to crimes, including four counts of public indecency. See Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d at 940; see also Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d at 946 (Houston, *238 J., dissenting). After the insured's house was destroyed by a fire while a renewal insurance policy was in effect, the insurer, citing the misrepresentation on the application for the initial insurance policy, attempted to avoid its liability under the renewed insurance policy. The trial court entered a judgment as a matter of law in favor of the insured on the insurer's claim seeking rescission of the insurance policy, and our supreme court affirmed. The supreme court, relying on an opinion by a federal district court, concluded that the Alabama Legislature, in enacting § 27-14-7, intended that that statute apply only to initial policies of insurance and to the applications for those initial insurance policies. Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d at 941 (relying on State Farm Gen. Ins. Co. v. Oliver, 658 F.Supp. 1546 (N.D.Ala.1987)). In so holding, the court quoted with approval as follows from the federal district court's order in Oliver:
"`The only "policy or contract" here issued in response to [the insured's] application of November 16, 1984, was not the "policy or contract" which was in force at the time of the fire. The policy here involved was a renewal policy issued one year after November 16, 1984. When the Alabama Legislature provided that "misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery . . . unless", it obviously was mandating a strict interpretation of its subsequent language in favor of the insured. If literally construed, § 27-14-7(a)(3) makes no reference to any "policy or contract" except a "policy or contract" issued in direct and immediate response to the false application."'
Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d at 941 (quoting State Farm Gen. Ins. Co. v. Oliver, 658 F.Supp. at 1550).
In this case, the trial court's finding in its judgment that it could not say that Otis made "such blatant misrepresentations" as would invalidate the insurance policy as void indicates that the trial court found that Otis did, in fact, make some misrepresentations on the application for insurance. In fact, during the hearing in this matter, the trial court stated that it believed that Otis, while avoiding paying for the expensive insurance coverage for Christopher, had "attempt[ed] to fit [Christopher's use of the Escort] within a category of uses . . . that would satisfy the infrequent use provision" contained in the Quality Casualty policy. The trial court explained its conclusion as follows:
"Now, the evidence that has been presented by Mr. [Otis] Ruben was that that wasthat he discussed his son being in school. So, what it comes down to was, here is a discussion about the fine lines between coverage andat best, the lines between coverage and no coverage.
"And Mr. [Otis] Ruben, in effect, attempted  through their testimony, attempted to avoid having to pay the high premium by trying to have his son to use the car infrequently and to satisfy what theywhatever they may contend Mr. Holt said they could do in order not to incur that additional premium."
The trial court further stated that "the testimony that I have heard from the Rubens has suggested that they made an attempt to try to, you know, navigate this narrow exception without paying the premiums for it. And as I view the evidence, they failed." However, the court then concluded that whether Christopher's actual use of the Escort was too frequent to entitle him to coverage under the infrequent-use provision of Otis and Diane's insurance policy with Quality Casualty was not dispositive, given the holding of Alfa *239 Mutual General Insurance Co. v. Oglesby, supra.
Quality Casualty argues that in Alfa Mutual General Insurance Co. v. Oglesby, supra, our supreme court misinterpreted the legislative intent behind § 27-14-7 and that that case should be overruled. In making its argument, Quality Casualty cites Chief Justice Hooper's dissent in Alfa Mutual General Insurance Co. v. Oglesby, supra, in which Chief Justice Hooper stated:
"The issuance of a renewal policy should not operate to void the effect of statements made in the originaland only  application. See 43 Am.Jur.2d Insurance § 1020 (1982) (`in the absence of a new application or anything showing a different intention, the renewal of a fire insurance policy is impliedly made on the basis that the statements in the original application or policy are still accurate and operative'). Section 27-14-7 was certainly not written to protect an insurer from misrepresentations made in the application, but only for the length of the original policy term. Under the rationale of the majority opinion, an insured could give false information on an application for insurance and then hide the truth for a year (or whatever the term of the original policy), and then, once a renewal policy is issued, be free from the consequences of being untruthful. I do not believe one should benefit from being untruthful."
Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d at 945 (Hooper, C.J., dissenting).
Quality Casualty also cites In re HealthSouth Corp. Insurance Litigation, 308 F.Supp.2d 1253, 1273-74 (N.D.Ala.2004), a recent opinion from the same federal district court that issued State Farm General Insurance Co. v. Oliver, supra, the opinion upon which the holding in Alfa Mutual General Insurance Co. v. Oglesby, supra, was based. In that case, the federal district court, relying on the Alabama Supreme Court's holding in Alfa Mutual General Insurance Co. v. Oglesby, supra, concluded that an insurance company could not "rescind a policy under § 27-14-7(a)(3) unless the policy was issued `in direct and immediate response to the false application."' In re HealthSouth Corp. Ins. Litig., 308 F.Supp.2d at 1275 (citing State Farm Gen. Ins. Co. v. Oliver, 658 F.Supp. at 1550). However, we note that in its decision in In re HealthSouth Corp. Insurance Litigation, supra, the federal district court questioned whether our supreme court, in deciding Alfa Mutual General Insurance Co. v. Oglesby, supra, intended to limit that decision to situations involving only § 27-14-7(a)(3). See In re HealthSouth Corp. Ins. Litig., 308 F.Supp.2d at 1272-75. Quality Casualty briefly made a similar argument to the trial court. The dissent bases much of its argument that the facts of this case are distinguishable from those of Alfa Mutual General Insurance Co. v. Oglesby, supra, on ideas set forth in the federal court's decision in In re HealthSouth Corp. Insurance Litigation, supra.
We agree that a distinction might be drawn between the facts and arguments presented in Alfa Mutual General Insurance Co. v. Oglesby, supra, and those of this case. However, the supreme court held, without qualification, that § 27-14-7 applies only to initial insurance policies and the applications for those policies. Alfa Mut. Gen. Ins. Co. v. Oglesby, supra. We conclude that it would be more prudent for this court to follow the precedent set forth by our supreme court than to speculate regarding any qualification of that court's holding in Alfa Mutual General Insurance Co. v. Oglesby, supra. Whether this court agrees with the rationale of Alfa Mutual General Insurance *240 Co. v. Oglesby, supra, or with the sentiments expressed in Chief Justice Hooper's dissent in that case is not determinative. This court is bound by the precedents established by the Supreme Court of Alabama. § 12-3-16, Ala.Code 1975; see also C & S Constr. Co. v. Martin, 420 So.2d 788, 789 (Ala.Civ.App.1982) (this court may not overrule decisions of our supreme court); and Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972) ("the Court of Civil Appeals is without authority to overrule the decisions of this court"). Thus, "[a]lthough the supreme court might choose to revisit this issue, this court is bound by precedent." Farmers Ins. Exch. v. Raine, 905 So.2d 832, 835 (Ala.Civ.App.2004). Therefore, we must affirm the trial court's judgment based on the precedent of Alfa Mutual General Insurance Co. v. Oglesby, supra.
AFFIRMED.
PITTMAN, J., concurs.
BRYAN, J., concurs specially, with writing.
MURDOCK, J., concurs in the result, without writing.
CRAWLEY, P.J., dissents, with writing.
BRYAN, Judge, concurring specially.
I concur in the main opinion. Although I agree with Chief Justice Hooper's dissent in Alfa Mutual General Insurance Co. v. Oglesby, 711 So.2d 938, 945-46 (Ala. 1997), I am constrained to follow the precedent established by the supreme court's decision in that case. See § 12-3-16, Ala. Code 1975 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals. . . ."). As Chief Justice Hooper aptly noted, "one should [not] benefit from being untruthful." 711 So.2d at 945. The record indicates that the trial court essentially found that Otis made a misrepresentation on the application for insurance. Whether in the present case or in another case, I urge the supreme court to revisit or to clarify the precedent established by that court in Alfa Mutual General Insurance Co. v. Oglesby, supra.
CRAWLEY, Presiding Judge, dissenting.
I respectfully dissent. I believe this case is distinguishable from Alfa Mutual General Insurance Co. v. Oglesby, 711 So.2d 938 (Ala.1997), on the basis described by federal district Judge Bowdre in In re HealthSouth Corp. Insurance Litigation, 308 F.Supp.2d 1253 (N.D.Ala. 2004), and, further, on the basis explained below.
First, in Oglesby, the supreme court quoted from Judge Acker's opinion in State Farm General Insurance Co. v. Oliver, 658 F.Supp. 1546 (N.D.Ala.1987), which specifically refers to § 27-14-7(a)(3), Ala.Code 1975. Although the supreme court's opinion in Oglesby regularly cites to § 27-14-7 in its entirety, the operative principles invoked in that case were evidently related to § 27-14-7(a)(3). Therefore, as Judge Bowdre suggests, to the extent Oglesby addresses the applicability of other subsections of § 27-14-7, those references are dicta.
"The Alabama Supreme Court in Oglesby did not address the specific language in [§] 27-14-7(a)(3) upon which Judge Acker relied when he determined that subparagraph (a)(3) requires an application for the policy to be rescinded. The Court did not even set out under which subparagraph of § 27-14-7 Alfa sought rescission, but apparently Alfa relied on subparagraph (a)(3) when it contended that the misinformation was material and it would not have issued the policy had it known the truth. See *241 711 So.2d at 940. The Court did not hedge in any way when it stated that § 27-14-7  without reference to any subparagraph  applies to initial policies and applications. However, the Court did not have squarely before it whether subparagraphs (a)(1) intentional fraud or (a)(2) material misinformation are similarly limited. In other words, the only issue squarely presented to the Court was whether subparagraph (a)(3) required an application for the specific policy in question. Because the requirements of § 27-14-7 as a whole was not before the Court and was not necessary to the decision in that case, the Court's pronouncement is dictum and not controlling. See Mitchell v. Vann, 278 Ala. 1, 174 So.2d 501, 507 (1965); Knight v. State, 273 Ala. 480, 142 So.2d 899, 905 (1962) (describing dictum as `express[ing] an opinion based on facts not shown by the record'); Kimball v. Cunningham Hardware Co., 192 Ala. 223, 68 So. 309, 311 (1915) (same).
"Because the precise issue before the Alabama Court involved § 27-14-7(a)(3), not the section as a whole, making the court's pronouncement as to § 27-14-7 dictum; and because the Court only quoted from Judge Acker's discussion of subparagraph (a)(3) as it related to an application for the policy, the court doubts whether the Alabama Supreme Court, if confronted with the precise issue, would follow Oglesby's broad pronouncement. A closer examination of the initial language of § 27-14-7(a) increases the court's doubt.
"The section begins by providing that statements in `any application for an insurance policy . . . or in negotiations therefor' are representations and not warranties. The second sentence, which leads into the three alternative statutory grounds for denial of recovery, provides that misinformation `shall not prevent a recovery under the policy or contract. . . .' (Ala.Code § 27-14-7(a)). Applying the same statutory construction employed by Judge Acker and approved by the Alabama Supreme Court, `the policy or contract' in the prefatory paragraph refers to the one issued in response to the application, or in response to `negotiations therefor.' Thus, a solid argument could be made based on statutory construction that an insurer can deny recovery under `the policy or contract' because of fraudulent or material misrepresentations contained in an application for that policy or `in negotiations therefor,' regardless of whether the policy is the initial policy or a renewal policy."
In re HealthSouth Corp. Ins. Litig., 308 F.Supp.2d at 1273 (some emphasis original; some emphasis added).
I also note that the majority in Oglesby consisted of three Justices concurring in the main opinion authored by Justice Shores and Justice Butts concurring specially. Three Justices dissented, and Justice Maddox recused himself. Justice Butts's special concurrence noted specifically that he agreed "that the legislature intended that § 27-14-7(a)(3) apply only to initial policies and the applications therefor. . . ." Oglesby, 711 So.2d at 945. Consequently, Justice Butts's special concurrence adds weight to the notion that we should construe references in Oglesby to the entire statute to be dicta.
Additionally, although the subparagraphs in § 27-14-7(a) overlap in purpose, making it problematic to discern a clear distinction between "[m]isrepresentations, omissions, concealment of facts and incorrect statements" that are fraudulent or material under subparagraphs (a)(1) and (a)(2) respectively, and those that fall within *242 the provisions of subparagraph (a)(3), such a distinction can be made.
Section 27-14-7(a)(3) provides the most broad exception to the rule that "[m]isrepresentations, omissions, concealment of facts and incorrect statements shall not prevent recovery." § 27-14-7(a), Ala.Code 1975. The other subparagraphs, because they involve either more culpable conduct as in subparagraph (a)(1), or require any "[m]isrepresentations, omissions, concealment of facts and incorrect statements" to be material, as in subparagraph (a)(2), are both more narrow exceptions to the general rule enumerated by § 27-14-7(a). Fraud or other material misrepresentations are distinct from the more broadly worded provisions of subparagraph (a)(3), which provides simply that had the insurer known the truth (regardless of whether it was fraudulently omitted or material) it might have issued the policy under different terms or not at all.
Also important is the fact that the information the insured omitted from his insurance application in Oglesby involved convictions for indecent exposure, which, although relevant to the insurance company for purposes of deciding whether to provide insurance, is arguably less material to the decision to provide homeowner's insurance than the matter omitted in this case was to the decision to provide automobile insurance. In this case, a purchaser of automobile insurance is alleged to have omitted information about who would be driving the vehicle the insurance policy was intended to cover. Such an omission goes to the heart of the decision to issue the insurance policy and clearly could be considered a fraudulent or at least material omission under subparagraphs (a)(1) or (a)(2), respectively.
Finally, I note that, because a broad interpretation of the supreme court's decision in Oglesby would open the doors to untruthful insurance applicants reaping an unfair benefit if the insurance company does not discover an omission before renewing the policy, we should instead construe the Oglesby decision narrowly.
Because this case is distinguishable from Oglesby for the reasons stated above, I respectfully dissent.