This Court granted certiorari review to revisit our holding in Alfa Mutual General Insurance Co. v. Oglesby,711 So.2d 938 (Ala. 1998).
 Facts and Procedural History
In July 2003, Otis J. Ruben applied for automobile insurance for his 2002 Ford Escort automobile. In the application for the insurance, Otis chose not to include his son Christopher as a regular driver on the policy, because to do so would have cost over $1,300 more for a six-month period than it cost to cover only Otis and his wife, Diane. Otis represented in his application for insurance that Christopher was not a regular driver of the Escort and that he was not a resident of Otis's household in Tuscaloosa. Otis further represented on his application that Christopher, who was attending college in Birmingham, did not keep the car at school.
Quality Casualty Insurance Company agreed to provide Otis with automobile insurance. Otis understood that Christopher would have coverage while driving the Escort to the extent that Christopher used the automobile only as an "infrequent user." Had Christopher been listed as a regular driver of the Escort, Quality Casualty maintains, it would not have issued the policy or it would not have issued the policy for the same premium.
Christopher had moved to Birmingham in June 2003 to attend college. Initially, Christopher walked to class or rode with his brother or friends. Around August or September 2003, Otis allowed Christopher to keep the Ford Escort at school, but he testified that Christopher was to use the Escort only to get to class during bad weather and occasionally to come home to Tuscaloosa on weekends.
The policy Quality Casualty had issued based on Otis's July 2003 application expired in January 2004. Quality Casualty then issued a renewal policy. Otis did not complete a new application before the renewal policy was issued, and Quality Casualty did not investigate whether any of the information on Otis's application for insurance had changed. Otis did not notify Quality Casualty that Christopher was driving the Escort and that it was in Christopher's possession in Birmingham.
On April 4, 2004, Christopher was in an automobile accident in the Ford Escort *Page 244 
while he was driving home to Tuscaloosa from dinner. Otis sought insurance coverage for the accident on the basis of the renewal policy, which was in effect at the time of the accident.
Quality Casualty refused to pay the claim resulting from the accident and sued Otis and Christopher, among others, seeking a judgment declaring that it was "not obligated to defend, indemnify, or provide any benefits to the Defendants" (1) because Christopher "was not a `resident' of the insureds' home at the time of the accident" and (2) because Otis had misrepresented material information in his application for insurance coverage. In support of its argument, Quality Casualty cited § 27-14-7, Ala. Code 1975, which states:
 "Misrepresentation, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
 "(1) Fraudulent;
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for. . . ."
Quality Casualty alleges that Otis misrepresented Christopher's status as a resident of Otis's household and driver in Otis's application for insurance. Under the heading of the application entitled "Resident Driver Information (List all residents dependents (licensed or not) and regular operators)," Otis had listed himself and his wife, but not Christopher, even though Christopher was allegedly both a resident of Otis's household and a regular operator of the Escort. Otis and his wife denied Quality Casualty's allegations and filed a counterclaim, alleging that Quality Casualty had breached its insurance contract and had acted in bad faith in refusing to pay the accident claim.
After an ore tenus hearing, the trial court held that Quality Casualty was not relieved from providing insurance coverage under its insurance contract with Otis. The trial court based its ruling against Quality Casualty on this Court's holding inAlfa Mutual General Insurance Co. v. Oglesby,711 So.2d 938 (Ala. 1998), which interpreted § 27-14-7 to apply only to original policies and not to renewal policies. The Court of Civil Appeals affirmed the trial court's judgment, relying on the same case. Quality Casualty Ins. Co. v.Ruben, 962 So.2d 234 (Ala.Civ.App. 2006). Quality Casualty petitioned for certiorari review; this Court granted certiorari review to consider whether to overrule its previous holding inOglesby that § 27-14-7 applies only to original policies, and not to renewal policies. We reverse the judgment of the Court of Civil Appeals, and to the extentOglesby holds that § 27-14-7, Ala. Code 1975, applies only to an original insurance policy issued on an application for insurance and not to a renewal insurance policy, even if the renewal insurance policy was issued on the basis of the original application, we are overrulingOglesby.
 Standard of Review
The issue presented in this case — whether § 27-14-7
applies to renewal policies as well as original policies — is an issue of statutory construction; therefore, this Court's review is de novo. Whitehurst v. Baker,959 So.2d 69 (Ala. 2006).
 Analysis
Section 27-14-7, Ala. Code 1975, provides:
 "(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations *Page 245 
therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
 "(1) Fraudulent;
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."
This Court, interpreted § 27-14-7 in Oglesby, supra. In Oglesby, Alfa Mutual General Insurance Company ("Alfa") issued a homeowner's insurance policy to Oglesby. When Oglesby's house was destroyed in a fire, he filed a claim with Alfa under his homeowner's insurance policy. Alfa filed a declaratory-judgment action, seeking to rescind its contract with Oglesby because, Alfa argued, Oglesby had made material misrepresentations in his application for insurance. Specifically, Oglesby had "failed to answer `yes' to the question `Has anyone in the household ever been arrested for any reason?'" although Oglesby had, in fact, been arrested eight times. 711 So.2d at 940. The trial court directed a verdict for Oglesby on Alfa's misrepresentation claims, under § 27-14-7. Alfa appealed, and this Court affirmed the trial court's judgment, holding that the "legislature intended that § 27-14-7 apply to initial policies and the applications therefor" and not to renewal policies. 711 So.2d at 941. This Court concluded that the trial court properly directed a verdict in favor of Oglesby, even though Oglesby had misrepresented facts in his initial policy application, because Oglesby was seeking to recover under his renewal policy and not under the original policy.
This Court in Oglesby relied on a federal district court's interpretation of § 27-14-7 in State FarmGeneral Insurance Co. v. Oliver, 658 F.Supp. 1546
(N.D.Ala.1987), quoting the following language:
 "`The only "policy or contract" here issued in response to [the insured's] application of November 16, 1984, was not the "policy or contract" which was in force at the time of the fire. The policy here involved was a renewal policy issued one year after November 16, 1984. When the Alabama Legislature provided that "misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery . . . unless," it obviously was mandating a strict interpretation of its subsequent language in favor of the insured. If literally construed, § 27-14-7(a)(3) makes no reference to any "policy or contract" issued in direct and immediate response to the false application.'"
Oglesby, 711 So.2d at 941 (quoting StateFarm, 658 F.Supp. at 1550). Thus, in Oglesby, this Court interpreted § 27-14-7(a)(3) to exclude renewal policies, even though the plain language of the statute does not authorize such an exclusion, on the premise that the issuance of the renewal policy was independent of the representations made in the initial application for insurance coverage.
We agree with Chief Justice Hooper's dissent inOglesby that "[n]othing in § 27-14-7 *Page 246 
indicates that it applies only to the initial application and the initial policy." 711 So.2d at 945. Section 27-14-7 protects insurers from having to pay claims made under an insurance policy or contract if, "in any application for an insurance policy," the insured made a fraudulent or material misrepresentation or if the insurer would not have issued the policy had it known the truth. The statute does not differentiate between original applications and renewal policies.
The insurance policy at issue in Oglesby was renewed annually, but as Chief Justice Hooper observed:
 "[T]here was only one application, and Oglesby was not truthful in completing it. There is no evidence of a substitute application; the application involved in this case is the original application. We might have a different situation if Oglesby had completed a new application with each renewal. He did not.
 "The issuance of a renewal policy should not operate to void the effect of statements made in the original — and only — application. See 43 Am.Jur.2d Insurance § 1020 (1982) (`in the absence of a new application or anything showing a different intention, the renewal of a fire insurance policy is impliedly made on the basis that the statements in the original application or policy are still accurate and operative'). Section 27-14-7 was certainly not written to protect an insurer from misrepresentations made in the application, but only for the length of the original policy term. Under the rationale of the majority opinion, an insured could give false information on an application for insurance and then hide the truth for a year (or whatever the term of the original policy), and then, once a renewal policy is issued, be free from the consequences of being untruthful. I do not believe one should benefit from being untruthful. The majority is rewarding Oglesby for not telling the truth and for concealing the truth for five years. . . . Oglesby misrepresented a fact that was material to the acceptance of the risk, and Alfa took that risk under the belief that Oglesby had had no prior arrests. The fact that Oglesby seeks recovery under a renewal policy should not excuse his untruthfulness."
We agree with Chief Justice Hooper. The homeowner's policy inOglesby was renewed annually based on Oglesby's original application. We find no plausible basis on which to read § 27-14-7 as applicable to an original policy and not applicable to a renewal policy, when the renewal policy is issued on the basis of the original application. Thus, we overrule Oglesby to the extent that it interprets § 27-14-7 as applicable only to original insurance policies and not to renewal policies, when the renewal policy is issued based on the application for the original policy.
Both the trial court and the Court of Civil Appeals relied onOglesby in their decisions. In its order, the trial court stated, "[b]ased on Oglesby the Court rejects [Quality Casualty's] contention that Section 27-14-7 bars coverage for Defendants for the accident" even though the trial court also acknowledged that "I would not find that the use done by Chris Ruben would be the kind of infrequent use that the policy provision would permit." The Court of Civil Appeals expressed a similar concern, pointing out that "[w]hether this court agrees with the rationale of Alfa Mutual GeneralInsurance Co. v. Oglesby, . . . or with the sentiments expressed in Chief Justice Hooper's dissent in that case is not determinative. This court is bound by the precedents established by the Supreme Court of Alabama."962 So.2d at 239-40. *Page 247 
This Court has great respect for the doctrine of stare decisis; at the same time, "we should not blindly continue to apply a rule of law that does not accord with what is right and just."Ex parte State Farm Fire Cas. Co.,764 So.2d 543, 545 (Ala. 2000).
 "`The doctrine of stare decisis tends to produce certainty in our law, but it is important to realize that certainty per se is but a means to an end, and not an end in itself. Certainty is desirable only insofar as it operates to produce the maximum good and minimum harm and thereby to advance justice. . . . When it appears that the evil resulting from a continuation of the accepted rule must be productive of greater mischief to the community than can possibly ensue from disregarding the previous adjudications on the subject, courts have frequently and wisely departed from precedent, 14 Am.Jur., Courts, § 126.'"
State Farm, 764 So.2d at 545 n. 3 (quoting Fox v.Snow, 6 N.J. 12, 25, 76 A.2d 877, 883-84 (1950)). In the present case, we believe that the previous interpretation of § 27-14-7 thwarts justice in that it enables an insured to lie on an insurance application and avoid the consequences of that lie, provided that the insured successfully conceals the lie through the initial policy period. The only countervailing benefit we see in continuing the Oglesby rule is the benefit to the insured that, if the insured is successful in concealing a lie on the application through the initial policy period, the courts will then aid the insured in benefiting from the lie and its concealment. This is not a "benefit" that warrants our adherence to stare decisis.
We reverse the judgment of the Court of Civil Appeals and remand this cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and LYONS, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.